IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

STEPHEN L. MILLER,            )
                              )
    Plaintiff,                )
                              )     CIVIL ACTION NO.
    v.                        )     2:05cv1131-MHT
                              )          (WO)
RELIASTAR LIFE INSURANCE      )
COMPANY, a corporation,       )
                              )
    Defendant.                )

## OPINION

At issue in this case, on defendant ReliaStar Life Insurance Company's motion for summary judgment, is whether ReliaStar's decision to deny plaintiff Stephen L. Miller's accidental dismemberment claim was permissible under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). For the reasons that follow, the court finds that the decision was permissible and thus that summary judgment should be entered in favor of ReliaStar.

## I.   APPLICABLE LEGAL STANDARDS

The parties agree that the ERISA standard for evaluating ReliaStar's decision denying benefits to Miller is the following six-part test:

> "(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> "(2) If the administrator's decision in fact is 'de novo wrong,' then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> "(3) If the administrator's decision is 'de novo wrong' and he was vested with discretion in reviewing claims, then determine whether 'reasonable' grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> "(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

2

> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> "(6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it."

Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1138 (11th Cir. 2004).

In addition, because this case is before the court on ReliaStar's summary-judgment motion, the court may find in favor of ReliaStar only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [ReliaStar] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## II. BACKGROUND

The facts, according to Miller, are as follows:  On August 13, 2004, Miller was working on his R.V. and hit his head on the hitch. His vision became blurred that night and continued to worsen.  He saw Dr. Ebrahim about

the loss of vision in his right eye, and Dr. Ebrahim referred him to Dr. Allan Kelley, an ophthalmologist. Dr Kelley's impression was that Miller's vision loss was a result of nonarteritic anterior ischemic optic neuropathy ("NAION"), a condition, the parties agree, that is not induced by trauma and that would be consistent with Miller's high blood pressure.

Dr. Kelley referred Miller to Dr. David Turok, who initially echoed Dr. Kelley's impression of NAION, but ordered an MRI, bloodwork, and, eventually, a Visual Evoked Potentials test. The MRI showed no abnormality, although the Visual Evoked Potentials test did.

Although Dr. Turok's initial impression was NAION, he noted in his Attending Physician's Statement that the optic neuropathy--whether traumatic or NAION--was "possibly traumatic," and, where the form inquired whether the injury was traumatic, he answered "possibly."

Miller, then an employee of MeadWestVaco Corporation, filed a claim under the Accidental Death and Dismemberment Plan MeadWestVaco had with Reliastar.

4

ReliaStar denied the claim, concluding that Miller's loss of sight was due to an existing medical condition and not an accident.

After learning that Miller had been denied benefits, Dr. Turok reviewed Miller's records and wrote a letter "clarifying" that the loss of vision was due to an accident.  He based this clarification on the temporal proximity between the accident and the vision loss.

Miller appealed up the ranks within Reliastar, and submitted Dr. Turok's clarification in support of his appeal.  ReliaStar asked Dr. Mark Johnson, an internal medicine specialist, to review Miller's records to determine if his vision loss was the result of an accident.  Dr. Johnson found that it was not; his conclusion was that there was "no documentation in the records to indicate that the original diagnosis of ischemic optic neuropathy was incorrect, and this is a condition unrelated to trauma."

5

Relying on Dr. Johnson's opinion, ReliaStar reaffirmed its denial benefits to Miller. Miller then brought this lawsuit challenging that decision.

### III. DISCUSSION: WAS THE ADMINISTRATOR'S DECISION "WRONG"?

Because Miller has not raised an issue of fact as to whether the administrator's decision was "wrong," Williams, 373 F.3d at 1138, this court need not go beyond the first step of the six-step ERISA analysis. In other words, the evidence unequivocally supports the administrator's decision.

The plan provides that "ReliaStar pays [the appropriate accidental dismemberment] benefit if you lose your life, limb or sight due to an accident." An accident, in turn, is defined as, "an unexpected, external, violent and sudden event." The policy excludes loss "directly or indirectly related to physical or mental illness."

ReliaStar denied Miller's claim on the rationale that

"the medical records [it] received do not document any accidental injury." It based its denial on the opinion of Dr. Johnson, who found that "there is no medical evidence in the records to establish a cause and effect relationship between the head bump and the visual loss." In particular, Dr. Johnson was impressed that Miller "did not sustain[] any damage to his head, eye, or any other portion of his body when he bumped his head on his R.V."

Essentially, ReliaStar's determination of eligibility presented ReliaStar with a choice between two equally likely causes of his vision loss: either that Miller's high blood pressure caused NAION or that Miller's bumping his head on his R.V. caused traumatic injury to the optic nerve. The doctors pointed to no definitive evidence that the injury was traumatic, nor to any that it was caused by high blood pressure. Rather, Dr. Turok was swayed by the temporal proximity between the accident and the vision loss and suggested that the cause was traumatic. Dr. Johnson, by contrast, was swayed by Miller's high blood pressure and the lack of evidence of

7

an accident.  Their conclusions are equally likely, given the evidence available to the court.  The trauma and the high blood pressure have both temporal proximity to the vision loss, and a tendency to cause vision loss. However, there is no evidence that one is any more likely to have caused the loss than the other.  ReliaStar, given this situation, denied benefits.

In rejecting Miller's claim, the administrator correctly determined that Miller bore the burden of proving that his accident was the cause of his injury, Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998), and that Miller failed to meet this burden in that it does not appear more likely than not that the injury was the result of an accident. Because Miller bears the burden, if he cannot demonstrate that it is more likely than not that an injury caused the accident, the administrator is entitled to deny benefits. See, e.g., Houchens v. American Home Assur. Co., 927 F.2d 163, 167 (4th Cir. 1991) (where plaintiff bore the burden of demonstrating, in order to recover under accidental

8

death policy, that death was an accident, and the evidence showed that it was as likely that death was not an accident, as it was likely that death had been an accident, plaintiff did not raise issue of material fact).

Miller nonetheless argues that ReliaStar bears the burden here, because, where an "insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage," id., and the decision to deny benefits was the application of an exclusion.

While it is true that there is a relevant exclusion in the plan, this is not the provision upon which ReliaStar based its denial of benefits. ReliaStar found that Miller did not qualify for benefits at all, not that he fell into a policy exclusion. Specifically, ReliaStar found that he did not qualify under the provision of the contract that provides that "ReliaStar pays this benefit if you lose your life, limb or sight due to an accident."

9

Miller attempts to avoid bearing the burden in the event that the policy exclusion is not at issue, by pointing out that there is no causation requirement in Reliastar's definition of an accident as "an unexpected, external, violent and sudden event." While this may be so, there is an obvious causation requirement in the entitlement provision: "ReliaStar pays this benefit if you lose your life, limb or sight due to an accident." This language--in particular, its "due to" phrase--unambiguously requires that, to qualify for a benefit, there be a causal connection between the accident and the injury. While, as the Eleventh Circuit Court of Appeals has recognized with respect to similar language, there may not need to be total identity between the accident and injury, such language nonetheless requires some causal link between an accident and the injury. Dixon v. Life Ins. Co. of North America, 389 F.3d 1179, 1184 (11th Cir. 2004). It was, therefore, not wrong for the administrator to deny the Miller benefits.

Admittedly, as Miller notes in his brief in opposition to summary judgment, there is a note in Dr. Kelley's initial records that the referring physician noticed blood in Miller's eye.  None of the doctors in this case, including Miller's own supporting physician, Dr. Turok, finds any significance in this fact, and, in particular, none of the doctors states that this fact suggests that Miller's loss of sight was due to trauma.  Indeed, there is nothing in the record as to whether Miller had blood in his eye before he allegedly hit is head.  Argument in a brief, without supporting testimony in the record from a medical expert, is inadequate to serve a basis for a finding that the notation in a doctor's record of blood in Miller's eye indicates that the loss of his sight was, or even could be, due to trauma and thus is adequate for this court to hold that Reliastar's decision denying benefits was wrong.

## IV. CONCLUSION

Because Miller has failed to carry his burden of presenting sufficient evidence that it is more likely than not that an accident caused the blindness in his right eye, ReliaStar is entitled to summary judgment. An appropriate judgment will be entered.

DONE, this the 21st day of November.

                                                                             <u>/s/ Myron H. Thompson</u>
                                                                            **UNITED STATES DISTRICT JUDGE**